UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>)<br>KRISHNASWAMI SRIRAM ) | No. 01 CR 22<br>Judge Elaine E. Bucklo |

NOTICE OF FILING

To: Jeffery Steinback
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604

Sheila Lally
U.S. Probation Office
55 E. Monroe St., Suite 1500
Chicago, IL 60603

PLEASE TAKE NOTICE that on Tuesday, July 8, 2003, the undersigned filed with the Clerk of this Court the following document in the above captioned case: **GOVERNMENT'S OBJECTION TO THE PRESENTENCE REPORT**, service of which is being made upon you.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

BY: *Jacqueline Stern*
JACQUELINE STERN
Assistant United States Attorney
219 South Dearborn - 5000
Chicago, Illinois 60604
(312) 353-5300

STATE OF ILLINOIS  )
                   )  SS
COUNTY OF COOK     )

Clara Long, being first duly sworn on oath deposes and says that she is employed in the Office of the United States Attorney for the Northern District of Illinois; and that on July 8, 2003 she caused the foregoing Notice and the above-described motion to be mailed to the above-named individual(s) on said date.

SUBSCRIBED and SWORN to before me this 8th day of July, 2003

*Peggy M. Zabinski*
NOTARY PUBLIC

"OFFICIAL SEAL"
Peggy M. Zabinski
Notary Public, State of Illinois
My Commission Exp. 06/04/2006

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 01 CR 22 |
| | ) | Judge Elaine E. Bucklo |
| KRISHNASWAMI SRIRAM | ) | |

## GOVERNMENT'S OBJECTION TO THE PRESENTENCE REPORT

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully objects to the Pre-Sentence Report's (PSR's) determination concerning the appropriate enhancement for the defendant's Role in the Offense, and urges the Court to impose a 4-level enhancement, rather than the 3-level enhancement recommended by the PSR.

A 4-level enhancement should be applied based on the defendant's role in the offense as a leader and organizer, in a scheme involving more than 5 participants. The defendant was a leader and organizer in that he directed and recruited other individuals. Indeed, the PSR concluded that Krasnow "recruited and supervised" doctors and patient recruiters in the fraud scheme, and that the scheme involved more than 5 people.

Although Krasnow worked hand in hand with the head of the hospital, Krasnow also acted as a leader and organizer of the fraud scheme at the hospital. The Commentary to Section 3B.1.1 states that "there can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."

See Commentary, Note 4. In this instance, even though the head of the hospital was a leader, Krasnow was also responsible for organizing and leading the fraud. The head of the hospital had minimal contact with the other fraud participants, and Krasnow was responsible for contacting, recruiting, and directing the other participants.

The defendant stipulated in his plea agreement that a 4-level enhancement for leader/organizer is applicable. Thus, the defendant cannot object to the imposition of a 4-level enhancement without breaching the plea agreement. The defendant has also waived his right to appeal this issue.

### Doctors Hospital: Unnecessary Admissions

The defendant directed the actions of Dr. Rao, Dr. Ravi Barnabas, and Dr. Monty McClellan, as well as the actions of certain patient recruiters[1]. The defendant organized the scheme, which involved obtaining patients to increase the hospital census, paying kickbacks to doctors in exchange for patient admissions, creating sham contracts to provide a means of paying kickbacks, and paying patient recruiters to find patients to be admitted into the hospital.

---

[1] There is no dispute that there were more than 5 participants in the scheme, and that the scheme was also otherwise extensive. The defendant made use of the services of innocent third parties, including secretaries, doctors, nurses, and hospital staff. "The guidelines recognize that a crime where the principals use "the unknowing service of many outsiders" may be found to be extensive under 3B1.1(a), application note 2." See U.S. v. Miller, 962 F.2d 739, 745 (7th Cir. 1992).

2

Krasnow admitted in the plea agreement that he gave certain doctors and patient recruiters cash, checks, contracts, and other incentives and benefits in exchange for patient admissions, which included the following:

> Doctors Hospital, Krasnow, and Dr. 1 provided fraudulent service contracts to certain doctors and individuals, including Dr. McClellan and Dr. Rao, thereby creating the false appearance that certain doctors and individuals were being paid for legitimate services, when in fact those individuals were being paid for the admission of patients.
>
> At least 5 doctors, besides Dr. Rao and Dr. McClellan, were given money or other things of value in exchange for admitting patients to the hospital. Dr. 1 and defendant Krasnow arranged for those doctors to have contracts, under which the doctors were paid, but did very little work in exchange for the money. In fact, the doctors were actually being paid for patient admissions. The doctors had to admit a substantial number of patients each month in order to keep the contracts;
>
> In or about June 1997, Doctors Hospital entered into a contract with Dr. Rao's company, and paid Dr. Rao approximately $16,666 each month so that Dr. Rao could pay patient recruiters and patients. The contract was designed to conceal the fact that those monies were being paid in exchange for patient admissions.

See Krasnow's Plea at pp. 4-5.

Krasnow contacted various doctors and directed them to increase the number of patients that they were admitting. Krasnow directed Dr. Monty McClellan to increase the admissions to the Two South Unit. Krasnow also told McClellan to admit patients to the medical unit first and then to refer them to the Chemical Dependency Unit, so that the hospital could generate more income from the same patients.

3

Krasnow directed doctors and patient recruiters to bring patients to the hospital. Krasnow told doctors and others to admit patients to Hyde Park. He put pressure on doctors to admit patients to the hospital.

Krasnow tried to prevent doctors and recruiters from sending patients to other hospitals. Krasnow argued with Rao about Rao's working for Edgewater Hospital, and told Rao that Rao should be sending his patients to Doctors Hospital. Krasnow also confronted another doctor about having patients at a different hospital, and told the doctor to send more patients to Doctors Hospital. Krasnow fired one patient recruiter, Marilyn Tolliver, because he believed that she was stealing patients and sending them to Edgewater Hospital instead of Doctors Hospital.

Krasnow was responsible for hiring two employees who participated in the scheme. Krasnow directed those employees to go to shelters and churches where there were alcoholics or addicts and recruit patients from those locations. They were paid a salary and a discretionary bonus based on the number of patients that were admitted. Although the head of the hospital had to approve their bonuses, Krasnow was the one who evaluated whether those two employees would get a bonus.

Krasnow also put another individual on the payroll, who acted as a driver for Dr. Barnabas. Krasnow set up that arrangement as a benefit for Barnabas in exchange for patient admissions.

There was a physician's assistant at Doctor's Hospital, who worked with Dr. McClellan. At some point, the physician's assistant refused to support the false entries that McClellan was making concerning the patients' medical histories and physical exams. Krasnow intervened and directed the physician's assistant to support McClellan and do what McClellan said.

Krasnow paid kickbacks directly to Dr. Rao month after month in exchange for patient admissions. Krasnow kept track of Rao's admissions. Rao reported to Krasnow about his admissions almost every day.

Krasnow also directed the social services department of the hospital to send patients to specific nursing homes, so that those nursing homes would send patients to Doctors Hospital. Krasnow directions concerning which nursing homes patients should be referred to were based on his attempt to increase the patient admissions, rather than being based on the best interests of the patients. Certain nursing homes would not send patients to Doctors Hospital unless the hospital would refer patients to the nursing homes in exchange. Krasnow was responsible for making sure that this quid pro quo arrangement was carried out.

Krasnow was responsible for organizing and directing the criminal conduct that took place in order to maintain and increase the patient census.

### The Desnick Eye Center: Unnecessary Allergy Testing

Krasnow selected the laboratory that the Desnick Eye Center used, and then obtained kickbacks from that laboratory for approximately 9 years. Krasnow paid Dr. McClellan to order unnecessary allergy testing, because that type of testing was very profitable for the laboratory. Krasnow stipulated in the plea agreement that this portion of the scheme was relevant conduct.

In his plea agreement, Krasnow described this part of the scheme as follows:

> During 1992 and 1993, defendant Krasnow, acting in concert with Dr. 1, paid Dr. McClellan thousands of dollars in cash kickbacks so that Dr. McClellan would order tests for patients at the Desnick Eye Center. In exchange for the kickbacks, Dr. McClellan ordered hundreds of medically unnecessary allergy tests.
>
> While defendant Krasnow was providing services for the Desnick Eye Center, he was receiving kickbacks. Dr. 1 gave defendant Krasnow authority to select the laboratory used by the Desnick Eye Center, and between approximately 1985 and 1990, defendant Krasnow received approximately $2000 a month from a medical laboratory owner in exchange for Krasnow's sending work to that laboratory. In 1990, another individual took over the lab. Between approximately 1990 and 1994, that lab owner paid defendant Krasnow a kickback of approximately $2,000 - $4,000 a week.
>
> During approximately 1992-1994, that laboratory owner also paid defendant Krasnow approximately $11,000 a month for allergy testing that was being done at the Miami Vision Center.

See Krasnow Plea at pp. 10-11.

Krasnow was a key player in the scheme at the Desnick Eye Center, as well as at Doctors Hospital. The scheme could not have been carried out without him.

6

In this instance, the scheme had more than one leader. Krasnow was the hands-on driving force behind the patient admissions and the payments of the kickbacks. Because of his role, a 4-level enhancement should be imposed.

## CONCLUSION

The government respectfully requests that the Court impose a 4-level enhancement because the defendant was a leader and organizer in a scheme involving more than 5 participants.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: /s/ Jacqueline Stern

JACQUELINE STERN
Assistant U.S. Attorney
219 South Dearborn, 5th Floor
Chicago, Illinois 60604
(312) 353-5329